IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMKOR TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| SYNAPTICS, INC. and VALIDITY | ) | **JURY TRIAL DEMANDED** |
| SENSORS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Amkor Technology, Inc., a Delaware Corporation ("Amkor"), by its undersigned attorneys, for its Complaint against Defendants Synaptics, Inc. ("Synaptics") and Validity Sensors, LLC ("Validity"), alleges as follows:

## NATURE OF THE ACTION

1.      In this action, Amkor, one of the world's leading suppliers of outsourced semiconductor interconnect services, seeks redress against Defendants Synaptics and Validity for violations of law and the norms of industry conduct.  Over a period of years, through guile and deception, Defendants have taken the intellectual property of Amkor, using misappropriated Amkor sensor packaging designs to build a highly successful business.  Defendants' conduct has been willful and malicious, and Amkor seeks damages, punitive damages, and injunctive relief to stop the Defendants from profiting from their illegal conduct.  Specifically, Amkor sues for infringement of United States Patent No. 7,358,174 (the "'174 Patent") (attached as Exhibit A) entitled "Methods of Forming Solder Bumps on Exposed Metal Pads" (the "Patent-in-Suit") under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, copyright infringement, misappropriation of trade secrets, breach of contract, unfair competition, tortious interference

with contract, civil conspiracy, violation of the Computer Fraud and Abuse Act, and violation of the Delaware Misuse of Computer System Information Act.

2.     Amkor collaborates with other businesses to create sophisticated electronic devices such as biosensors that, *e.g.*, detect when a user's fingerprint profile authorizes the user to have access to a smartphone.   Amkor creates the highly complex, technologically sophisticated interconnections or "packaging" for these devices.

3.     This action seeks relief for multiple forms of wrongdoing by Defendants relating to these biosensors, including but not limited to the following:

     a.     Defendants are actively inducing infringement of the '174 Patent and, upon information and belief, have directly infringed the '174 Patent.

     b.     Defendant Validity, in violation of its non-disclosure agreement, misappropriated Amkor's confidential and proprietary Wafer Level Fan Out ("WLFO") technology.   Validity wrongfully submitted Amkor's ideas and even its confidential diagrams to the United States Patent Office, falsely claiming them as its own and causing Amkor's valuable, confidential information to be placed into the public domain without Amkor's knowledge or consent.   In addition, upon information and belief, Validity and Synaptics have been using Amkor's confidential information as part of a plan to commercialize this WLFO technology.

     c.     Defendants Validity and Synaptics, again in violation of a non-disclosure agreement, misappropriated Amkor's confidential and proprietary design files for "flip chip chip scale package" technology.   Defendants sent to Amkor's primary competitor, third-party Advanced Semiconductor Engineering, Inc. ("ASE"), design files that were copied, in whole or substantial part, from the Amkor design files.   Upon information and belief, Synaptics, Validity and ASE together have collaborated on, and have been successfully selling, a product based on those files.

## THE PARTIES

4.     Plaintiff Amkor is a Delaware Corporation with its principal place of business in Tempe, Arizona.   Amkor is one of the world's largest providers of semiconductor packaging and test services.

5.     Upon information and belief, Defendant Synaptics is a Delaware corporation with its principal place of business in California, and is a developer and supplier of, among other things, touch-based semiconductor products.

6.     Upon information and belief, Defendant Validity is a Delaware limited liability company with its principal place of business in California, and is also a developer and supplier of touch-based semiconductor products.

7.     Upon information and belief, Defendant Synaptics acquired Validity Sensors, Inc. on or about November 7, 2013 and formed Validity Sensors LLC, which is the successor-in-interest to Validity Sensors, Inc.'s assets and liabilities.

## JURISDICTION

8.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §§ 1331, 1338(a) and § 1367.

## AMKOR'S BUSINESS

9.     Since its founding in 1968, Amkor has pioneered the development and outsourcing of semiconductor packaging and test services.  Amkor is a strategic manufacturing partner for more than 300 of the world's leading semiconductor companies, foundries and electronics original equipment manufacturers ("OEMs").

10.     Through a significant investment of time, capital, and people, Amkor has built a leading position in the semiconductor industry by designing innovative packaging for semiconductor chips to be used in electronic devices.  For example, Amkor's cutting-edge semiconductor packaging allows sensor integration into the phone to sense whether the user's fingerprint profile authorizes the user to have access to the phone.  Fingerprint identification on mobile phones is an ever-growing and important worldwide line of business.

11.     In recent years, Amkor has invested hundreds of millions of dollars on state-of-the-art facilities and equipment to provide services for the industry's most complex devices.

12.     With approximately 400 employees engaged in research and development focusing on the design and development of new semiconductor packaging and test technologies, Amkor has achieved technology leadership in areas such as advanced flip chip and wafer-level semiconductor processing and packaging.  The industry in which Amkor competes is highly fragmented, and Amkor's renowned technology leadership sets Amkor apart from its competition in capturing the most valuable business opportunities as customers and leading electronics manufacturers strive for smaller device geometries, higher levels of speed and performance, and lower power consumption. Protection of its technology and trade secrets is absolutely critical to Amkor's core strategy and business model.

## WAFER LEVEL FAN OUT TECHNOLOGY

### Amkor Enters into A Non-Disclosure Agreement with Validity in 2008

13.     On or about September 30, 2008, Amkor and Validity entered into a Mutual Non-Disclosure Agreement ("2008 NDA") to allow Validity access to Amkor's confidential information.  The 2008 NDA defines "Confidential Information" as all information relating to, among other things, "business plans, technology, product plans, products, developments, inventions, processes, designs, [and] drawings[.]"  2008 NDA § 1.2.  The 2008 NDA was drafted for the express purpose of strictly protecting the confidentiality of Amkor's "Advanced Packaging" technology which was to be shared with Validity.  *See id.* App'x A ("Permitted Purpose").

14.     The parties to the 2008 NDA agreed that the recipient of Confidential Information "shall disclose Confidential Information only to those of its employees, agents and independent contractors who have a need to know such information for the Permitted Purpose[,]" *id.* § 2.3,

and further agreed not to reproduce or copy any Confidential Information without the discloser's prior written consent, *id.* § 2.4, or remove any "proprietary rights legend" from "materials disclosing or embodying Confidential Information." *Id.* § 2.5.

15.     Importantly, except for permitted uses expressly contemplated in the agreement, the 2008 NDA "grants no license … under any copyrights, patents, trademarks, trade secrets or other proprietary rights to use or reproduce Confidential Information." *Id.* § 2.7.

16.     Moreover, "[i]n the event that Confidential Information is or becomes the subject of a patent application, patent, copyright, or other proprietary right, Recipient agrees and understands that Discloser will have all the rights and remedies available to it under the law as a result of said patent application, patent, copyright or other proprietary right." *Id.*

17.     The 2008 NDA remains in full force "for a period of three (3) years from the Effective Date" of September 30, 2008, and the "obligations regarding confidentiality shall continue for a period of five (5) years from disclosure of Confidential Information or until such time as the subject Confidential Information of a Discloser disclosed under this Agreement becomes publicly known or made generally available through no action by the Recipient." *Id.* § 3.

### Pursuant to the NDA, Amkor Shares Confidential and Proprietary Wafer Level Fan Out Technology With Validity

18.     In or around March 2010, Amkor approached Validity about designing a package for a new fingerprint biosensor, which could be used, *inter alia*, to provide access to a smart phone, using a new technology called Wafer Level Fan Out ("WLFO").

19.     For more than two years, Amkor engaged in intensive research and development efforts, both in the United States and Korea, to develop semiconductor packaging suitable for the WLFO project.  A dedicated team of more than twenty employees was diverted from other

projects to work on WLFO development.   Amkor spent approximately $7 million dollars on equipment alone for this project, which it purchased specifically for this project.

20.     In various documents and meetings in 2010 and 2011, Amkor provided its confidential and proprietary ideas, designs, product plans, and other confidential information regarding WLFO to Validity, pursuant to the 2008 NDA.   In particular, pursuant to the 2008 NDA, Amkor provided three critical diagrams in documents and presentation materials to Validity.

21.     The diagrams, specifically those on slide 2 of Amkor's confidential presentation dated March 2010 and on slides 8 and 7 of Amkor's confidential presentation dated September 2010 (redacted versions of which are reproduced here as Figures 1a, 1b, and 1c, respectively, below) were marked as "Amkor Proprietary Business Information."   They demonstrate essential design information for the WLFO technology and the design process, which is a major technological step forward with significant commercial value belonging to Amkor.

22.     Nonetheless, Validity copied substantial portions of each of those diagrams into patent applications that Validity then passed off as its own and filed with the Patent and Trademark Office.   The copied materials are substantially similar to, and in many respects virtually identical to, the Amkor source materials.   In addition, Validity incorporated into the patent applications substantial additional confidential know-how and information acquired in confidence from Amkor corresponding to the diagrams that they copied.

23.     Validity's non-provisional patent application is currently pending.

24.     Figures 2a, 2b, and 2c on the pages below are diagrams included in Validity's provisional patent application and correspond respectively to Amkor Figures 1a, 1b, and 1c. Figures 3a, 3b, and 3c are diagrams included in Validity's patent application and, again,

correspond respectively to Amkor Figures 1a, 1b, and 1c. The striking similarity of the corresponding diagrams is evident.

**Figure 1a: Amkor's Wafer Level Fan Out**



**Figure 2a: Validity Provisional Patent Application Figure 13 Copies Amkor's Presentation**



Figure 3a: Validity Patent Application Figure 13 Copies Amkor's Presentation



## Figure 1b: Amkor's Wafer Level Fan Out Device Structure



## Figure 2b: Validity Provisional Patent Application Figure 4 Copies Amkor's Presentation



Figure 3b: Validity Patent Application Figure 4 Copies Amkor's Presentation



FIG. 4

Figure 1c: Amkor's Wafer Level Fan Out Device Process Flow



Figure 2c: Validity Provisional Patent Application Figure 5 Copies Amkor's Presentation



Figure 3c: Validity Patent Application Figure 5 Copies Amkor's Presentation



**Patent Application Publication**     Oct. 11, 2012  Sheet 3 of 11      US 2012/0256280 A1

FIG. 5

25.     The WLFO technology shown in the figures above is a method to produce semiconductor chip packages that has technical advantages over other manufacturing processes including, *inter alia*, a resulting lower manufacturing error rate because the circuitry provided from a manufacturing partner is tested before being incorporated into the semiconductor packaging.

26.     Amkor took reasonable precautions to maintain the secrecy of its WLFO technology by, for example, requiring the use of non-disclosure agreements.

**Validity Violates the NDA By Submitting Amkor's Confidential and Proprietary Diagrams to the U.S. Patent Office**

27.     On March 16, 2011, Validity filed U.S. provisional patent application No. 61/453,460 (the "'460 Application"). On March 14, 2012, Validity filed U.S. Patent Application No. 13/420,188, "Packaging for Fingerprint Sensors and Methods of Manufacture" (the "'188 Application").

28.     Unbeknownst to Amkor and without its express or implied permission, Validity utilized and disclosed Amkor's Confidential Information in both the '460 and the '188 Application.

29.     In particular, as an essential part of the '460 Application, Validity submitted three diagrams, shown above as Figures 2a, 2b, and 2c that copy both the content and expression of Amkor's proprietary and confidential information.

30.     In particular, as an essential part of the '188 Application, Validity submitted three diagrams, shown above as Figures 3a, 3b, and 3c that copy both the content and expression of Amkor's proprietary and confidential information.

31.     Validity's publication of the '188 Application fails to list Amkor or any of its employees as inventors and does not include Amkor's proprietary rights legend as required by the 2008 NDA.

32.     Upon information and belief, Validity and/or Synaptics has used or intends to use Amkor's proprietary WLFO technology to make biosensors for commercial distribution, which upon information and belief, will result in annual revenue exceeding tens of millions of dollars.

## FLIP CHIP BIOSENSORS

### Amkor Enters Into A Subsequent Non-Disclosure Agreement With Validity in 2012

33.     On or about July 2012, Validity and Amkor began discussing utilizing another form of technology for a biosensor called a "flip chip."

34.     Flip chip technology is an improvement over some other forms of semiconductor packages because it allows a higher number of sensor connections, using Amkor's fine pitch bump technology.  Flip chip technology also enables smaller chips and thinner, smaller form factors (or physical package dimensions).

35.     On or about August 9, 2012, Amkor and Synaptics entered into a Mutual Non-Disclosure Agreement ("2012 Synaptics NDA") in order to exchange confidential information.

36.     On or about August 14, 2012, Amkor and Validity entered into a subsequent Mutual Non-Disclosure Agreement ("2012 Validity NDA") in order to exchange confidential information relating to flip chip packaging.

37.     As with the 2008 NDA, the 2012 Validity NDA defines "Confidential Information" as all information relating, *inter alia*, to "business plans, technology, product plans, products, developments, inventions, processes, designs, [and] drawings[.]"  2012 Validity NDA § 1.2.

14

38.     The 2012 Validity NDA was drafted for the purpose of, *inter alia*, "evaluat[ing] possible business relationship(s) of mutual interest to the Parties related to semiconductor assembly[" and "to engage in such relationship(s) (if any) undertaken by the Parties." *See id.* App'x A ("Permitted Purpose").

39.     The parties to the 2012 Validity NDA agreed that the recipient of Confidential Information "shall not disclose Confidential Information to third parties, and shall prevent the disclosure of such information to third parties . . . ." *Id.* § 2.2.

### Amkor Provides Confidential and Proprietary "Flip Chip" Design Files to Validity Pursuant to the 2012 Validity NDA

40.     Pursuant to the 2012 Validity NDA, Amkor and Validity agreed to cooperate in building a flip chip semiconductor package.  Intensive research and design work on the flip chip took place in late 2012 and into 2013.  More than twenty Amkor employees worked on the development effort, which became one of Amkor's top priorities company-wide.

41.     On September 6, 2012, Amkor agreed to provide Validity with Amkor's highly confidential design rules for the flip chip chip scale package ("FCCSP").  Amkor developed these valuable rules as a result of years of research and testing.  Amkor expressly reminded Validity that the design rules are proprietary and that Amkor was disclosing them only pursuant to the NDA.  Design rules are important and confidential specifications relating to how to build the chip, which would be of significant value to a competitor.

42.     On October 10, 2012, Joe Johnson of Amkor sent the first design file for the project, which by then had been given the code name Raptor, to Validity.  Mr. Johnson had developed this file as an implementation of FCCSP technology that Amkor had developed and refined over years of research and testing.  This technology remained the heart of the substrate design throughout the Raptor project's various iterations.

## Synaptics Acquires Validity, and Validity Employees
### Begin to Request More Confidential Information from Amkor

43.     On or about November 8, 2013, Synaptics bought Validity for $255 million.

44.     Upon information and belief, prior to purchasing Validity, Synaptics was a company that specialized in human interfaces with technology, but lacked fingerprint identification technology.  Upon information and belief, Synaptics had long sought access to the highly lucrative biometrics market.  The purchase of Validity gave Synaptics prime access to that market via fingerprint identification technology, on which Amkor and Validity were working together, using Amkor's proprietary information.

45.     Upon information and belief, Synaptics had a pre-existing relationship with ASE, a competitor of Amkor, prior to Synaptics' acquisition of Validity.

46.     During the time frame of Synaptics' acquisition of Validity, employees from Validity starting asking many questions about Amkor's design work and process, coming to the plant for visits, and asking questions that they had not asked before.  The questions were detailed inquiries about the technology, in one highly unusual instance asking even for Amkor's complete specifications.

47.     Amkor accommodated Validity's requests in most respects, continuing to develop and send Raptor design files to Validity into early 2014.  Amkor then successfully completed its R&D and production on this technology, enabling Validity to incorporate that technology into its product and sell tens of millions of dollars of product.

48.     However, Validity nonetheless insisted that Amkor cut its pricing drastically. Amkor refused, and Validity unceremoniously dumped Amkor.  Subsequently, Amkor learned that Validity had begun working with Amkor arch rival ASE instead.

49.    Upon information and belief, Validity's questioning of Amkor about Amkor's design work and process was at the behest of Synaptics, for the purpose of misappropriating Amkor's confidential and proprietary information, transferring it to ASE, and cutting Amkor out of the picture.  Upon information and belief, Synaptics and Validity subsequently carried out this plan, thus enabling ASE to create the same product at much lower costs, because ASE had not incurred any of the substantial development costs and time that Amkor had expended.

### Validity and Synaptics Misappropriate Amkor's Confidential and Proprietary "Flip Chip" Design Files and Send them to Amkor's Primary Competitor

50.    On January 14, 2014, Amkor learned that Validity, in violation of the 2012 Validity NDA and without Amkor's knowledge or consent, had sent Amkor's confidential Raptor files to ASE.

51.    Specifically, on January 14, 2014, Richard Quinn of Validity sent the following email to Fernando Roa of Amkor:  "Hi Fernando, can you get this .mcm saved in V16.5? Thanks, Rich."  He attached a file "AR_SYN_003.R2.zip".  The file is of a type used to prepare circuit designs.

52.    When opening the AR_SYN_003.R2.zip file, Amkor was shocked to discover that the file was not an original Amkor design file, but a file created by ASE.  Even more troubling, the file contained an exact copy of the design submitted by Amkor to Validity solely for purposes of Amkor and Validity's work together, except that Amkor's name, confidentiality legend, and copyright notice were removed and the name "ASE Group" was prominently added. Furthermore, the design rules for the FCCSP technology accessible from a menu in the design file were an exact copy of Amkor's FCCSP design rules.

53.    With these documents, Mr. Quinn mistakenly forwarded a long email chain spanning several weeks among Validity, Synaptics and ASE, demonstrating that Validity had

been feeding Amkor design information to ASE.  The unintentional forwarding of the chain, which was never meant for Amkor's eyes, blew open the scheme and demonstrated that Validity and Synaptics had willfully stolen Amkor's confidential information and turned it over to a competitor.

54.     Validity and Synaptics had been asking Amkor to provide its confidential and proprietary information pursuant to the 2012 Validity NDA, and then Validity and Synaptics passed the information to Amkor's primary competitor, ASE.  Validity and Synaptics carried out this scheme in substantial part using Brett Dunlap, a former Amkor employee now employed by Validity and/or Synaptics, who made the requests for information to his former colleagues.

55.     Thereafter, upon information and belief, Validity and Synaptics produced product based on these misappropriated designs and sold tens of millions of dollars of product as a result.

56.     Amkor took reasonable precautions to maintain the secrecy of its flip chip technology, for example by requiring the use of non-disclosure agreements.   Through Validity and Synaptics's willful disregard of Amkor's rights, Amkor has suffered and will continue to suffer the loss of its highly valuable confidential information, resulting in the loss of important business opportunities in a highly dynamic and lucrative market.

**Amkor Registers Diagrams from its Confidential and
Presentations with the United States Copyright Office**

57.     Amkor applied to the U.S. Copyright Office for a Certificate of Registration for a work titled "Presentation of March 2010 Slide 2 Figure," a copy of the deposit for which appears below as Figure 4a.  The Copyright Office granted Amkor's application and assigned registration number VAu001221551 to it, as shown on the page from the Copyright Office's Copyright Catalog attached hereto as Exhibit B.

Figure 4a: Amkor's Copyrighted Work, "Presentation of September 2010 Slide 2 Figure"



58.    Amkor applied to the U.S. Copyright Office for a Certificate of Registration for a work titled "Presentation of September 2010 Slide 8 Figure," a copy of the deposit for which appears below as Figure 4b. The Copyright Office granted Amkor's application and assigned registration number VAu001221552 to it, as shown on the page from the Copyright Office's Copyright Catalog attached hereto as Exhibit C.

Figure 4b: Amkor's Copyrighted Work, "Presentation of September 2010 Slide 8 Figure"



## COUNT I
### Infringement of U.S. Patent No. 7,358,174
### (Against Validity and Synaptics)

59.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

60.     Amkor is the assignee of all right, title and interest in and to the '174 Patent.

61.     Defendants actively, knowingly, and intentionally induce infringement of the '174 Patent in violation of 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing Defendants' customers to make, use, offer for sale, import, and sell, in the United States, fingerprint sensors that are made by one or more processes claimed by the '174 Patent and are incorporated into smartphones, thus directly infringing the '174 Patent under 35 U.S.C. § 271(g). Defendants' inducement of infringement under § 271(b) occurs with Defendants' knowledge, at least as of the date of this suit, of the '174 Patent and its claims; with Defendants' knowledge that its customers directly infringe the claimed methods of the '174 Patent under 35 U.S.C. § 271(g); and with Defendants' knowledge and specific intent to encourage and facilitate that direct infringement.

62.     Upon information and belief, Defendants are also liable for direct infringement under 35 U.S.C. § 271(g), on account of their using, offering for sale, importation, and sale, in the United States, of fingerprint sensors that are made by one or more processes claimed by the '174 Patent.

63.     Defendants have had knowledge of and actual notice of the '174 Patent and their infringement since at least, and through, the filing and service of the Complaint, and despite this knowledge will, upon information and belief, continue to infringe the '174 Patent.

64.     Defendants' infringement has caused and is continuing to cause damage and irreparable injury to Amkor, and Amkor will continue to suffer such injury unless and until infringement is enjoined by this Court.

65.     Amkor is entitled to injunctive relief and damages pursuant to 35 U.S.C. §§ 271, 281, 283 and 284.

**COUNT II**
**Copyright Infringement—Wafer Level Fan Out**
**(Against Validity and Synaptics)**

66.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

67.     Amkor is the author of its confidential and proprietary presentations of March 2010 and September 2010 and of each figure contained therein, including but not limited to those figures it registered with the U.S. Copyright Office.

68.     Amkor is the owner of the copyright registrations for the works "Presentation of March 2010 Slide 2 Figure" and "Presentation of September 2010 Slide 8 Figure" (hereinafter "Amkor's Copyrighted Figures").

69.     Defendants had access to Amkor's original works of authorship now registered as Amkor's Copyrighted Figures.

70.     In violation of 17 U.S.C. § 106(2), Defendants created derivative works from Amkor's original works of authorship, Amkor's Copyrighted Figures, for use in the '460 and '188 Applications, without authorization.

71.     In violation of 17 U.S.C. § 106(1), Defendants copied Amkor's original works of authorship, Amkor's Copyrighted Figures, into the '460 and '188 Applications without authorization.

72.     In violation of 17 U.S.C. § 106(5), Defendants distributed to the public, via the applications to the U.S. Patent and Trademark Office, Amkor's original works of authorship, *i.e.,* Amkor's Copyrighted Figures, without authorization.

73.     Amkor has been damaged by Defendants' unauthorized creation of derivative works from Amkor's Copyrighted Figures, unauthorized copying of Amkor's Copyrighted Figures, and unauthorized distribution of Amkor's Copyrighted Figures.

74.     As a result of the foregoing copyright infringement, Amkor is entitled to damages in an amount to be proven at trial.

## COUNT III
### Misappropriation of Trade Secrets—Wafer Level Fan Out
### (Against Validity and Synaptics)

75.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

76.     Pursuant to the 2008 NDA, Validity had and has, among other things, the duty to not disclose Amkor's confidential and proprietary information to third parties.

77.     Validity and Synaptics have misused and/or publicly disclosed information, which constitutes the trade secrets of Amkor, and which conduct constitutes misappropriation of trade secrets.

78.     As a result of Validity's misconduct, Amkor is entitled to damages and an injunction against further use of Amkor information.

## COUNT IV
### Breach of Contract—Wafer Level Fan Out
### (Against Validity)

79.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

80.     Pursuant to the 2008 NDA, Validity had the duty, among other things, not to disclose Amkor's confidential information to third parties or use it for a purpose other than the parties' work together.

81.     In violation of the terms of the 2008 NDA, Validity has publicly disclosed certain of Amkor's confidential information and disclosed to Amkor's competitor additional Amkor confidential information.

82.     As a result of Validity's breach of the 2008 NDA, Amkor is entitled to damages and an injunction against further use of Amkor's information.

## COUNT V
### Unfair Competition—Wafer Level Fan Out
### (Against Validity and Synaptics)

83.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

84.     Amkor had a reasonable expectation of business relationships based on the technology it developed, including but not limited to the development of WLFO packaging with Validity, which has been interfered with through Validity's claimed ownership of the technology.

85.     As a result of Validity's misconduct, Amkor is entitled to damages and an injunction against further use of Amkor's information.

## COUNT VI
### Misappropriation of Trade Secrets— Flip Chip
### (Against Validity and Synaptics)

86.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

87.     Validity and Synaptics were aware of the terms of the 2012 Validity NDA, including but not limited to the duty to not disclose Amkor's confidential and proprietary information to third parties.

88.     Validity and Synaptics have misused and/or disclosed information to at least one third party, which constitutes the trade secrets of Amkor, and which conduct constitutes misappropriation of trade secrets.

89.     As a result of Validity and Synaptics's misconduct, Amkor is entitled to damages and an injunction against further use of Amkor's information.

## COUNT VII
### Breach of Contract—Flip Chip
### (Against Validity and Synaptics)

90.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

91.     Validity and Synaptics were aware of the terms of the 2012 Validity NDA, including but not limited to the duty not to disclose Amkor's confidential information to third parties.

92.     In violation of the terms of the 2012 Validity NDA, Validity and Synaptics have disclosed Amkor's confidential information to at least one third party.

93.     As a result of Validity and Synaptics's breach of the 2012 Validity NDA, Amkor is entitled to damages and an injunction against further use of Amkor's information.

## COUNT VIII
### Breach of Contract
### (Against Synaptics)

94.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

95.     Synaptics was aware of the terms of the 2012 Synaptics NDA, including but not limited to the duty not to disclose Amkor's confidential information to third parties.

96.     In violation of the terms of the 2012 Synaptics NDA, Synaptics has disclosed Amkor's confidential information to at least one third party.

97.     As a result of Synaptics's breach of the 2012 Synaptics NDA, Amkor is entitled to damages and an injunction against further use of Amkor's information.

## COUNT IX
### Unfair Competition— Flip Chip
### (Against Validity and Synaptics)

98.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

99.     Amkor had a reasonable expectation of business relationships based on the technology it developed, including but not limited to the additional revenue from sales of flip chip packaging to Validity and Synaptics, which has been interfered with through Validity's claimed ownership of the technology.

100.    As a result of Validity's misconduct, Amkor is entitled to damages in an amount to be proven at trial.

## COUNT X
### Tortious Interference with Contract—2012 Validity NDA
### (Against Synaptics)

101.    Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

102.    The 2012 Validity NDA is a valid, enforceable contract between Amkor and Validity.

103.    Upon information and belief, Synaptics was and is aware of the terms of the 2012 Validity NDA, including Section 2.

104.    As a result of Synaptics' intentional actions, Validity has breached Section 2 of the 2012 Validity NDA.

105.    As a result of Synaptics' tortious interference with the 2012 Validity NDA, Amkor is entitled to injunctive relief and damages in an amount to be proven at trial.

## COUNT XI
### Civil Conspiracy
### (Against Validity and Synaptics)

106.    Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

107.    As more fully set forth above, Validity and Synaptics agreed and knowingly and willfully conspired between themselves to misappropriate Amkor's trade secrets, breach the 2008 NDA, the 2012 Validity NDA, and the 2012 Synaptics NDA, and commit other wrongful actions.

108.    Validity and Synaptics did the overt acts and things herein alleged in furtherance of the conspiracy and agreement alleged above.

109.    As a direct and proximate result of Defendants' misconduct, Amkor has suffered and continues to suffer injury and actual damage for which Defendants should be held liable.

## COUNT XII
### Violation of Computer Fraud And Abuse Act
### (Against Validity and Synaptics)

110.    Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein

111.    Amkor's computer system is a protected computer and network which is used across state lines in interstate commerce, has Internet access across state lines and was used to transfer Amkor's information for sales in interstate commerce.

112.     Amkor did not authorize Validity and/or Synaptics to access Amkor's computerized information for the gain of Validity, Synaptics, and/or any Amkor competitor, in violation of the 2012 Validity NDA.  However, Validity and/or Synaptics have done so.

113.     Through the above-described conduct, Validity and/or Synaptics intentionally accessed a protected computer without authorization or exceeded its authority, and, as a result of such conduct, caused damage to Amkor aggregating at least $5,000 in value this year in violation of 18 U.S.C. § 1030(a)(5)(C).  As a result of Validity's and/or Synaptics' misconduct, Amkor is entitled to damages in an amount to be proven at trial.

## COUNT XIII
### Violation of Delaware Misuse of Computer System Information Statute
### (Against Validity and Synaptics)

114.     Amkor incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115.     Amkor did not authorize Validity and/or Synaptics to receive or retain Amkor's computerized information or make any copies of or disclose Amkor's computerized information in violation of the Section 2 of the 2012 Validity NDA.

116.     Through the above-described conduct, Validity and/or Synaptics exceeded its authority to access Amkor's computerized information, and, as a result of such conduct, caused damage to Amkor.  As a result of Validity and/or Synaptics' misconduct, Amkor is entitled to injunctive relief and restitution in an amount to be proven at trial.

WHEREFORE, Amkor respectfully requests the following relief:

a)     A judgment that the Defendants have infringed the '174 Patent;

b)     An award of all appropriate damages under 35 U.S.C. § 284 for Defendants' past infringement, and any continuing or future infringement of the Patent-In-Suit, up until the date of such judgment, including pre- and post-judgment interest, costs, and disbursements as justified

under 35 U.S.C. § 284 and, if necessary, to adequately compensate Amkor for Defendants' infringement;

c)      An award of damages against Defendants for all other wrongful conduct proven at trial;

d)      A declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285;

e)      A judgment awarding Amkor its attorneys' fees, costs and expenses, as well as pre- and post-judgment interest;

f)      The issuance of an order enjoining Defendants from infringing the Patent-In-Suit and from using, selling or importing infringing fingerprint sensors in or into this country or inducing infringement thereof;

g)      The issuance of an order enjoining Defendants from further using or disclosing Amkor's information and from selling, marketing, or developing products based on it;

h)      The imposition of a constructive trust upon the '460 Application and the '188 Application in favor of Amkor;

i)      Transfer of the ownership of the '460 Application and the '188 Application to Amkor; and

j)      Such further relief at law or in equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Amkor hereby demands trial by jury on all claims and issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

OF COUNSEL:                                    *Attorneys for Plaintiff*

Martin J. Black
Diane Siegel Danoff
William T. McEnroe
Joseph J. Gribbin
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
(215) 994-4000

October 9, 2015